UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

LANA M. SINCLAIR,

      Plaintiff,

v.                                                          Case No. 5:06-CV-179

UNITED STATES OF AMERICA,                    HON. GORDON J. QUIST
et al.,

      Defendants.

———————————————————/

## OPINION

### Background

On April 29, 2005, Plaintiff, Lana M. Sinclair ("Sinclair"), through her attorney, David

Schoolcraft, filed a complaint in this Court against Bankers Trust Company of California, N.A.

("Bankers Trust").  In that case, Case No. 5:05-CV-72, Sinclair alleged that Bankers Trust falsely

represented that her mortgage would be reinstated upon a payment of $3,075 and that the sheriff's

sale scheduled for August 7, 2003, would be canceled.  After Sinclair had defaulted on her mortgage

loan several times, Bankers Trust foreclosed the mortgage and Sinclair failed to redeem the property

within the statutory period.   Sinclair remained in possession of the property, and Bankers

commenced a proceeding for possession of the property in the 64th district court.  The district court

entered judgment in favor of Bankers Trust on September 24, 2004.  Sinclair appealed the judgment

of possession to the Ionia County Circuit Court, which denied her appeal on April 22, 2005.  The

circuit court subsequently denied Sinclair's request for a new trial.  Bankers Trust then obtained an

order of eviction from the district court, and Sinclair appealed that order, which served to enforce

the September 24, 2004, judgment of possession.  On September 20, 2005, the circuit court dismissed Sinclair's appeals and directed her to vacate the property within ten days.

On December 13, 2005, after attorney Schoolcraft withdrew from representing Sinclair, this Court entered an Opinion and Order granting Bankers Trust's motion to dismiss on the basis that Sinclair's claims were barred by the *Rooker-Feldman* doctrine.  This Court held that *Rooker-Feldman* applied because Sinclair sought to set aside the state court's judgment granting possession to Bankers Trust and to have this Court restore possession of the property to her.  The Court further concluded that Sinclair's claims were barred under the doctrine of claim preclusion.

Sinclair commenced the instant lawsuit almost one year later when, on November 7, 2006, she filed her *pro se* complaint consisting of 73 pages, 301 paragraphs, and multiple counts alleging violations of various federal and state laws against approximately twenty defendants, including, among others, the United States of America; the State of Michigan; Ionia County; Hon. Charles H. Miel, the Ionia County circuit judge who denied Sinclair's appeals of the possession and eviction orders; attorney Schoolcraft; Coldwell Banker Hoppough & Associates and Cathleen Hoppough, the realtor who listed the property for sale at the request of Defendant Countrywide Home Loans, the servicing agent for Bankers Trust; and Defendants Laura, Michael, and Brandon Vandeventer and Ewers Septic Service, who entered into, but subsequently withdrew from, a purchase agreement for the property following entry of the judgment of possession.  The caption was styled *Lana M. Sinclair, d/b/a Avenging A.N.G.E.L.S. Ministries v. United States of America, et al.*  Sinclair filed an amended and expanded  complaint containing 91 pages, 348 paragraphs, and 29 numbered and unnumbered counts.  On February 8, 2007, Sinclair filed a voluntary dismissal of her claims against the United States.  In short, Sinclair's amended complaint is a patchwork of various claims against several parties all arising out of, or connected to, the state court's judgment of possession and order of eviction.

2

Presently before the Court are the following motions:  (1) Defendants Bankers Trust's and Countrywide Home Loan's motion to dismiss, motion for summary judgment, and motion for bill of peace; (2) Defendant State of Michigan's motion to dismiss; (3) Defendants Laura L. Vandeventer, Michael J. Vandeventer, Brandon K. Vandeventer, and Ewers Septic Service's motion to dismiss or, alternatively, for summary judgment; and (4) Defendants Ionia County's and Charles H. Miel's motion to dismiss.  On March 2, 2007, the Court entered an Order which, among other things, granted Sinclair until March 20, 2007, to respond to the foregoing motions.  In accordance with the March 2, 2007, Order, Sinclair filed her response on March 20, 2007.  Also on that date, Sinclair filed a notice of appeal of the Court's denial in its March 2, 2007, Order of her motion for reconsideration of her motion for appointment of counsel.  While the filing of a notice of appeal from a final order generally deprives a district court of jurisdiction, a district court's order denying a motion for the appointment of counsel is generally not immediately appealable, either as a final or collateral order.  *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760-64 (6th Cir. 1985).  Thus, the Court is not precluded from ruling on the instant motions because Sinclair's filing of her notice of appeal did not effect a transfer of jurisdiction from this Court to the court of appeals. *See Estate of Conners v. O'Conner*, 6 F.3d 656, 658 (9th Cir. 1993); *Mail-Well Envelope Co. v. Reg'l Transp. Dist.*, 150 F.3d 1227, 1229 (10th Cir. 1998); *United States v. Kapelushnik*, 306 F.3d 1090, 1094 (11th Cir. 2002).  Finally, Defendants R.E. Risk & Associates Court Services and Rick Eugene Risk have recently filed a motion to dismiss and for summary judgment.  Although Sinclair has not had the opportunity to respond to the motion, the Court will still consider it because it raises a common argument asserted in the other motions, namely, that most of the asserted claims are barred by the *Rooker-Feldman* doctrine and that the remaining claims fail to state a claim upon which relief can be granted.  Moreover, the Court notes that because Sinclair has been granted leave to proceed *in forma pauperis*, the Court may screen the complaint to determine whether it should

3

be dismissed on the grounds that it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915(e)(2); *see also Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999) (holding that "§ 1915(e)(2) applies only to in forma pauperis proceedings").

<u>**Analysis**</u>

I.   ***Rooker-Feldman Doctrine***

As noted above, all parties, except the State of Michigan, have moved for dismissal and/or for summary judgment upon the ground some or all of Sinclair's claims are barred by the *Rooker-Feldman* doctrine.  This Court's December 13, 2005, Opinion in Case No. 5:05-CV-72 discussed the contours of the *Rooker-Feldman* doctrine as defined by the then-recent decision by the United States Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005).  The Court will rely upon the analysis of the doctrine in that Opinion and, for purposes of the instant discussion, will reiterate only its basic tenants.  First, the doctrine prohibits federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.2d 783, 793 (6th Cir. 2004) (citations omitted).  Second, the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp.*, 544 U.S. at 284, 125 S. Ct. at 1521-22.  Finally, the doctrine is applicable only where the injury alleged arises from the state court judgment itself.  *See Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006).  "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.  If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an

4

independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). For example, in *Coles*, a prior state court judgment determined that Erie County Metropolitan Metroparks possessed a valid leasehold interest in certain property along an old canal. After Metroparks began to develop the property as a trail, the plaintiffs filed an action in federal court alleging that the defendants were encroaching upon property beyond that found by the state court to be included within the Metroparks' leasehold interest. The Sixth Circuit rejected the defendants' argument that the plaintiffs' claims were barred by *Rooker-Feldman*, because the plaintiffs were not seeking to throw out the state court judgment but, rather, to enforce it. *See Coles*, 448 F.3d at 859. The court noted that "*Rooker-Feldman* applies only when a plaintiff asserts injury from the state court judgment," *id.* at 859, and the plaintiffs were alleging that the defendants were the one injuring them. *See id.* In its analysis, the court discussed another case, *Todd v. Weltman, Weinbert & Reis Co.*, 434 F.3d 432 (6th Cir. 2006), where *Rooker-Feldman* did not preclude jurisdiction. In that case, the court rejected the defendant's argument that *Rooker-Feldman* barred the plaintiff's federal claim that the defendant had lied in an affidavit submitted in support of a prior state court garnishment proceeding. The court concluded that the doctrine did not apply because the defendant was alleging injuries from the defendant's deception and not from the state court judgment. *See id.* at 437.

Turning to Sinclair's amended complaint, the Court concludes that a number of claims are barred under *Rooker-Feldman*. Count I, which alleges wrongful eviction, is barred. Sinclair alleges that multiple defendants are responsible for damage to her personal property that was removed from the premises in connection with the eviction. This claim goes to the heart of the state court's eviction order, from which Sinclair's alleged injuries arise.

Count II, which alleges a due process violation, is also barred. Sinclair's claim that the Risk Defendants violated her due process rights by removing her possessions is a direct attack on the eviction order that was being enforced. Similarly, her allegations concerning other defendants

regarding the events leading up to and including the wrongful eviction is also an attack on the state court judgment.

Counts IV (fraudulent misrepresentation), V (trespass), VI (trespass causing damage), VIII (violation of Michigan Manufactured Home Act), IX (violation of Michigan Board of Realtors Ethics, Standards, and Practices), X (conversion/Federal Trade Commission Act), XI (conspiracy), XII (corporate fraud), XVI (fraud) (at least in part), XVII (constitution), XVII (sic) (constitution), XX (constitution), and XXVI (constitution) (at least in part) are barred by the *Rooker-Feldman* doctrine. Although many of these counts are rambling, lengthy, and fail to comply with the requirement of a "short and plain" statement set forth in Fed. R. Civ. P. 8(a), the focus of these claims, at least in part, is upon events occurring after the state court issued the judgment of possession and the order of eviction and that were pursuant to, or in furtherance of, those orders. Common themes of these claims are that the Risk Defendants wrongfully evicted Sinclair pursuant to an invalid order, that the Hoppough Defendants wrongfully listed, entered, and attempted to sell the property, and that the Vandeventer Defendants wrongfully entered into a purchase agreement for the property. These claims are thus based upon her assertion that she had a possessory interest in the property and a continuing right to occupy it. These claims necessarily dispute the validity of the state court's judgments and orders because Sinclair's claims are at odds with those orders and, in order to grant Sinclair relief, this Court would be required to find that the judgment and order are invalid. Sinclair's alleged injuries therefore arise from the state court's judgment and order.[1]

## II.     Claim and Issue Preclusion

Most of Sinclair's claims are also barred by the doctrines of claim and issue preclusion. Claim preclusion bars a second action when "(1) the first action was decided on the merits, (2) the

---

[1]Sinclair's response to the motions provides further support for application of the *Rooker-Feldman* doctrine because Sinclair states throughout her brief that the state court judgment and order are void for a number of reasons, including that Judge Miel acted without jurisdiction.

matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Mgmt.*, 463 Mich. 569, 575, 621 N.W.2d 222, 225 (2001) (quoting *Dart v. Dart*, 460 Mich. 573, 586, 597 N.W.2d 82, 88 (1999)). Claim preclusion applies "both to claims actually raised in the prior action and to 'every claim arising out of the same transaction which the parties, exercising reasonable diligence, could have raised but did not.'" *Limbach v. Oakland County Bd. of Road Comm'rs*, 226 Mich. App. 389, 396, 573 N.W.2d 336, 340 (1997) (quoting *Sprague v. Buhagiar*, 213 Mich. App. 310, 313, 539 N.W.2d 587, 589 (1995)). On the other hand, issue preclusion "precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceedings." *Ditmore v. Michalik*, 244 Mich. App. 569, 577, 625 N.W.2d 462, 467 (2001). The parties to the second action need only be substantially identical to the parties in the first action, because the rule applies to parties and their privies. *See Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 43, 191 N.W.2d 313, 315 (1971). A privy includes "a person so identified in interest with another that he or she represents the same legal right," such as those in "the relationship of principal and agent, master and servant, or indemnitor and indenitee." *Viele v. D.C.M.A.*, 167 Mich. App. 571, 580, 423 N.W.2d 270, 274 (1988), *modified in part on other grounds*, 431 Mich. 898, 432 N.W.2d 171 (1988).

In this case, claim preclusion and issue preclusion are both applicable. First, the judgment of possession and the order of eviction were both litigated and decided on the merits. Second, both the judgment of possession and the order of eviction constitute final decisions. Third, with the exception of a few claims, as set forth below, the claims raised in this case were either addressed in the prior state court proceeding or could have been addressed in that proceeding. For example, in concluding that Bankers Trust was entitled to possession of the property, the state court necessarily

determined that Sinclair was in default under the mortgage, that the foreclosure was proper and Bankers Trust was entitled to possession, and that Sinclair had no further right to possess the property. The state court thus decided that the eviction was proper and that Bankers Trust was entitled to have Sinclair removed from the mobile home. The state court proceeding thus provides a basis for claim preclusion because it resolved many of the claims raised in this case and it also provides a basis for issue preclusion for any claim based upon wrongful entry upon the property, wrongful listing of it, or a wrongful sale, because the state court determined that Sinclair has no further interest in the property. Similarly, any claim that Sinclair asserts denying that she was in default is barred because that issue was conclusively established, and Sinclair's allegations of fraud on the court in the state proceeding are also barred. *See Kirkwood v. Mich. Inv. Servs.*, No. 225519, 2002 WL 362795, at *2 (Mich. Ct. App. Mar. 1, 2002) (stating that claim preclusion barred "plaintiffs' claims regarding alleged fraud on the court and whether plaintiffs made repayment on the underlying debt either prior to the default judgment on in 1994"). Finally, the prior action involved the same parties – Sinclair and Bankers Trust. Although Countrywide, Dave Sambol (an agent of Countrywide), Trott & Trott, P.C. (which represented Bankers Trust in the state court action), the Risk Defendants, Dan's Lock and Key, Bussell's Automobile Towing, the Hoppough Defendants, and the Vandeventer Defendants were not parties to the prior action, they are in privity with Bankers Trust because they either had the same interests as Bankers Trust or were acting in an agency or representative capacity while engaging in the conduct that forms the basis of Sinclair's claims in this case.

As mentioned above, some claims are not barred by claim or issue preclusion. Those claims are the Freedom of Information Act claim set forth in Count III, the violation of the Real Estate Settlement Procedures Act ("RESPA") set forth in Count VII, the malpractice or negligence claims set forth in Counts XIV and XIX, and the claim of violation of Title II of the Americans with

Disabilities Act ("ADA") set forth in Count XV.  However, those claims will be dismissed for other reasons set forth below.

### III.    Individual Motions

#### A.    Defendant Miel's Motion

Defendant Miel was the Ionia County Circuit Court judge in the state court proceedings.  He moves for dismissal on the ground that he is entitled to absolute judicial immunity.  Judicial immunity provides immunity to judges for all acts taken in their judicial capacities in § 1983 actions. *Stump v. Sparkman*, 435 U.S. 349, 355-56, 98 S. Ct. 1099, 1104 (1978).  "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."  *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 288 (1991) (per curiam) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985)).  Judicial immunity is lost only where the judge's acts are non-judicial in nature or where the acts, even if judicial in nature, are taken "'in the complete absence of all jurisdiction.'"  *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir. 1994) (quoting *Mireles*, 502 U.S. at 12, 112 S. Ct. at 288)).

Sinclair's allegations show that Defendant Miel is entitled to immunity because neither of the narrow exceptions to absolute judicial immunity are applicable in this case.  Although Sinclair generally alleges in a conclusory fashion that Defendant Miel acted without jurisdiction in the state proceeding, this allegation is without merit.  The type of proceeding – an action to obtain possession of real property – is well known as being a matter of state law within a state court's jurisdiction.  Thus, Defendant Miel is entitled to dismissal.

#### B.    Defendant Ionia County

Apart from asserting *Rooker-Feldman* and claim and issue preclusion, Defendant Ionia County contends that it is entitled to dismissal on the grounds that Sinclair: (1) fails to allege the existence of a custom or policy in connection with her claims under 42 U.S.C. § 1983; (2) fails to

allege facts giving rise to a claim against Ionia County; (3) fails to state an ADA claim because she does not allege that she received a right to sue letter from the Equal Employment Opportunity Commission and filed suit within 90 days of receipt; and (4) fails to allege the essential elements of a defamation claim.

First, with regard to Sinclair's claims under § 1983 for violation of her constitutional rights, the Court notes that Sinclair fails to allege any facts supporting a violation of her rights.  In Count II, captioned "Violation of Due Process – U.S. Constitution," Sinclair purports to allege a due process violation, although she cites the First, Fourth, and Eighth Amendments.  It is unclear how either the Fourth or the Eighth Amendment would apply.  The Fourth Amendment protects against unreasonable searches and seizures.  *See Ewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002).  Here, the eviction occurred pursuant to a lawful eviction order and was not an unreasonable search or seizure.  The Eighth Amendment applies to persons who have been convicted, *see Townsend v. City of Morehead*, No. 99-5575, 2000 WL 282475, at *2 (6th Cir. Mar. 9, 2000), and Sinclair does not allege that she was convicted of a crime.  Likewise, Sinclair fails to allege facts giving rise to a First Amendment claim.  To the extent that Sinclair claims that the act of evicting her from the property interfered with her First Amendment rights because she used it for religious purposes, the argument must fail because the First Amendment does not exempt individuals from their lawful private obligations.  Finally, although Sinclair also alleges in Count II that Defendant Rick Risk violated her due process rights under the Fifth and Fourteenth Amendments, there is no question that the eviction order was lawful and, thus, there was no due process violation.  The Court also notes that Sinclair alleges an equal protection violation in Count XVII but, as with her other purported constitutional claims, she fails to allege a factual basis for such a claim.  Ionia County is thus entitled to dismissal because Sinclair has not even alleged a constitutional violation.  Moreover, a municipality such as Ionia County cannot be held liable under § 1983 on a respondeat superior

theory. *See Monnell v. New York Dep't of Social Servs.*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036 (1978). Instead, a municipality must cause a municipal employee to violate another's constitutional rights under the color of some official policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298-99 (1986). Because Sinclair has failed to allege the existence of a policy or custom of Ionia County that led to a violation of Sinclair's constitutional rights, Ionia County is entitled to dismissal on this claim as well.

Second, Ionia County is entitled to dismissal because Sinclair merely includes it as a defendant without giving it notice of the basis for its liability. This is insufficient even under the liberal notice pleading standards of Fed. R. Civ. P. 8(a). *See Pollastrini v. Patternmakers Pension Trust Fund*, 34 F. Supp. 2d 701, 705-06 (N.D. Ill. 1999). For example, regarding the ADA claim, Ionia County is incorrect that Sinclair was required to first file a charge with the EEOC, because the EEOC is not charged with enforcing Title II of the ADA and the case does not arise in the employment context. *See Davis v. Univ. of N. Carolina*, 253 F.3d 95, 100 n.3 (4th Cir. 2001). However, in order to state a claim under Title II of the ADA, a plaintiff must allege that: (1) she is "a qualified individual with a disability"; (2) she was "excluded from participation in or [] denied the benefits of the services, programs, or activities of a public entity," or otherwise "subjected to discrimination by any such entity"; and (3) "by reason of such disability." 42 U.S.C. § 12132. *See also Holloman v. Jacksonville Hous. Auth.*, No. 06-10108 , 2007 WL 245555, at *2 (11th Cir. Jan. 30, 2007) (per curiam); *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006). Sinclair's claim fails because, assuming that she is a qualified individual with a disability, she does not allege that she was excluded from a public program, nor does she allege discrimination in any other manner. The fact that Sinclair was subjected to a valid eviction does not give rise to a claim under the ADA.

Finally, regarding the defamation claim, the elements of such a claim under Michigan law are "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged

communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 474 Mich. 21, 24, 706 N.W.2d 420, 421 (2005). Notwithstanding the length of this claim, Sinclair has failed to allege any of these elements, including a false and defamatory statement. Of course, to the extent that she asserts the default under her mortgage as the false statement, this claim would also be barred under issue preclusion, as set forth above. Therefore, dismissal of this claim is appropriate.

### C.    Defendant State of Michigan

The State of Michigan has moved for dismissal upon the grounds that it is entitled to Eleventh Amendment immunity and that the complaint fails to state a claim upon which relief can be granted. Dismissal is appropriate upon both grounds. First, as discussed above regarding Ionia County, Sinclair simply names the State as a defendant without including any specific allegations giving rise to a claim. Second, and more importantly, Eleventh Amendment immunity bars Sinclair's claims against the State. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. It is well established that the amendment prohibits suits by a citizen against his own state. *See Macklin v. Huffman*, 976 F. Supp. 1090, 1093 (W.D. Mich. 1997). The state sovereign immunity doctrine set forth in the Eleventh Amendment bars suits against states in federal court, regardless of the type of relief sought. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684, 687 (1993). Here, Sinclair seeks damages as her relief, and the Eleventh Amendment bars such relief against the State. Moreover, Sinclair has not alleged that the State has waived its immunity.

### D.      The Vandeventer Defendants' Motion

The Vandeventer Defendants' involvement with this case is that they submitted an offer to purchase the property, which they subsequently withdrew.  They have moved for dismissal upon grounds of *Rooker-Feldman* and failure to state a claim.  The Court has already concluded that *Rooker-Feldman* bars most of Sinclair's claims.  In addition, most, if not all, of the claims against these defendants are barred by claim and issue preclusion.  Finally, the Court has reviewed the claims against these defendants and agrees that Sinclair has failed to state a claim against them.  While the Court will not engage in an exhaustive analysis of the claims, it notes that the purported constitutional claims fail against the Vandeventer Defendants and all other non-government Defendants because they are not state actors.  *See Polk County v. Dodson*, 454 U.S. 312, 324-25, 102 S. Ct. 445, 453 (1981).  Similarly, the fraud and misrepresentation claims fail because Sinclair does not allege that the Vandeventer defendants made any misrepresentation of fact upon which she relied.  *See M & D, Inc. v. McConkey*, 231 Mich. App. 22, 27, 585 N.W.2d 33, 36 (1998).  Moreover, because the Vandeventer Defendants ultimately withdrew their purchase offer, it is difficult to imagine how their acts could have caused Sinclair damage.

### E.      The Risk Defendants' Motion

In their motion, in addition to asserting the *Rooker-Feldman* doctrine, the Risk Defendants argue that they are entitled to dismissal or summary judgment on Counts III and XXVI, which allege that these defendants violated the Michigan Freedom of Information Act ("FOIA"), M.C.L.A. § 15.231, et seq.  In Count III, Sinclair alleges that the Risk Defendants violated FOIA when they failed to respond to Sinclair's July 15, 2006, certified letter requesting information.

The Risk Defendants contend that they are entitled to summary judgment on this claim because they are not "public bodies" as defined by the FOIA.  The FOIA defines a "public body" as:

(I)     A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, . . . .

(ii)    An agency, board, commission, or council in the legislative branch of the state government.

(iii)   A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.

(iv)    Any other body which is created by state or local authority or which is primarily funded by or through state or local authority.

M.C.L.A. § 15.232(d)(1)-(iv).  The judiciary, including the office of the county clerk and employees of that office, when acting in the capacity of clerk to the circuit court, are excluded from the definition of "public body."  M.C.L.A. § 15.232(d)(v).  Neither Defendant Rick Eugene Risk nor his business, R.E. Risk & Associates, is a public body as set forth above.  Defendant Rick Risk, at all times, was acting as a court officer for the 64thA District Court, pursuant to an independent contractor agreement with that court.  (Risk Defs.' Br. Supp. Ex. 2.)  Accordingly, the FOIA claim fails.[2]

## F.      The Hoppough Defendants

Although the Hoppough Defendants have not filed a motion to dismiss or a motion for summary judgment, the Court notes that they are entitled to dismissal of Sinclair's claims against them for the reasons set forth above.  The Court notes that in Count VII, Sinclair attempts to allege a claim against the Hoppough Defendants and others under RESPA.  This claim, which appears to be based upon events subsequent to the conclusion of the state proceeding, would not be barred by claim or issue preclusion.  It is without merit, however, because Sinclair fails to allege that she was involved with a federally-related mortgage loan with these defendants, and she therefore lacks standing to assert such a claim.  *See Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993 (8th Cir. 2002).

---

[2]In light of its conclusion that the trespassing claims are barred by claim and issue preclusion, the Court need not address the Risk Defendants' separate argument regarding those claims.

14

### G.      Defendant Schoolcraft and Other Defendants

The Court notes that Defendant Schoolcraft and other Defendants have not yet been served. With regard to Defendant Schoolcraft, Sinclair asserts in her response that she received a notice on February 2, 2007, that Defendant Schoolcraft filed a bankruptcy petition in the Eastern District of Michigan.  The effect of the bankruptcy petition would be to halt the proceedings against Defendant Schoolcraft in this case because of the automatic stay under 11 U.S.C. § 362.  *See White v. White* (*In re White*), 851 F.2d 170, (6th Cir. 1988).  Sinclair must therefore proceed in the bankruptcy court on her claim against Defendant Schoolcraft.  Accordingly, the Court will dismiss her claims against Defendant Schoolcraft without prejudice.

It appears that other defendants, including Dan's Lock and Key and Bussell's Automobile Towing, have not been served.  However, dismissal of the claims against those defendants is still appropriate because the claims against them are barred either under the *Rooker-Feldman* doctrine or under principles of claim and issue preclusion.

### H.      Defendants Bankers Trust and Countrywide's Motion

Bankers Trust and Countrywide also moved for summary judgment upon the *Rooker-Feldman* doctrine and claim preclusion.  The motion will be granted for the reasons set forth above. In addition, Bankers Trust and Countrywide request that the Court issue an order enjoining Sinclair from filing future claims based upon the foreclosure, judgment of possession, and eviction.  This Court has the power to issue such relief when it appears that a plaintiff is likely to continue filing frivolous lawsuits that abuse the legal system and harass others, as in this case.  *See Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27, 30 (2d Cir. 2003).  In filing both Case No. 5:05-CV-72 and the instant case, Sinclair has demonstrated a propensity to use the judicial system to harass others and to prolong issues that have long been decided against her.  In the instant case, Sinclair sued practically any person having any connection to the disposition of the foreclosed property,

regardless of whether she in fact had a colorable claim.  This has resulted in unnecessary legal expense to the parties and a waste of the scarce judicial resources in this district at the present time. Accordingly, the Court will enjoin Sinclair from filing any future federal litigation concerning the foreclosure, judgment of possession, and eviction from the property without first obtaining authorization of the district court.  The Court will also enjoin Sinclair from pursuing any future state court litigation concerning these issues without attaching to her first filing in state court a copy of the Court's Order that will issue in connection with this Opinion.

## Conclusion

For the foregoing reasons, the Court will grant all of the pending motions to dismiss or for summary judgment and will dismiss all claims with prejudice, except for Sinclair's claims against Defendant Schoolcraft, which will be dismissed without prejudice.  The Court will also enjoin Sinclair from pursuing future litigation based upon the foreclosure of the property, judgment of possession, or eviction, as set forth above.

An Order consistent with this Opinion will issue.

Dated:  April 5, 2007                                   _____/s/ Gordon J. Quist_____
                                                                         GORDON J. QUIST
                                                                         UNITED STATES DISTRICT JUDGE